UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Shawn Carrier, | |
| Plaintiff, | Civil No. 3:25-cv-01808 (VAB) |
| v. | |
| Jay DelGrosso, et al., | December 2, 2025 |
| Defendants. | |

**RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* AND RECOMMENDED RULING ON INITIAL REVIEW OF THE COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)**

The plaintiff, Shawn Carrier, seeks to commence a lawsuit against Jay DelGrosso, the Chief of the Stonington, Connecticut Police Department; Elizabeth Leamon, a Probate Judge in Groton; and Brian Mezick, a Connecticut State Marshal (hereafter, "defendants").[1] Mr. Carrier is evidently involved in a property dispute over his late grandfather's estate, and he alleges that in the course of the dispute, he was "threatened" by Stonington Police officers.[2] He is requesting a "cease and desist order from harassment" by the Stonington Police Department and the Connecticut State Marshals, as well as the return of property located at 1 Circle Drive in Stonington and monetary damages in the amount of $300,000.[3] The Clerk of the Court assigned his case to the Honorable Victor A. Bolden, United States District Judge.

Mr. Carrier also filed a motion to proceed *in forma pauperis,* or "IFP." "*In forma pauperis*" is a Latin phrase meaning "in the form of a pauper," and plaintiffs who show that they are entitled

---

[1] Complaint, Docket No. 1, p. 1.
[2] Complaint, Docket No. 1, p. 4.
[3] Complaint, Docket No. 1, p. 5.

to proceed that way receive a waiver of the filing fees that are ordinarily required to commence a civil action. When a plaintiff seeks leave to proceed IFP, a statute directs the court to undertake two inquiries. First, the court reviews the plaintiff's financial affidavit and determines whether he is truly unable to pay the fee.[4] Second, to ensure that he is not abusing the privilege of filing a free lawsuit, the court examines his complaint and dismisses any claim that "is frivolous or malicious" or "fails to state a claim on which relief may be granted."[5]

Judge Bolden asked me—Magistrate Judge Thomas Farrish—to conduct these two inquiries. (Order of Referral, ECF No. 9.) For the reasons set forth below, Mr. Carrier has passed the first step by demonstrating that he is unable to pay the filing fee. (*See* discussion, Section I.) But he has not passed the second step, because his complaint fails to state a claim upon which relief can be granted. (*See* discussion, Section II.) While his complaint alleges wrongs by non-defendant police officers, it does not allege sufficient wrongs *by the defendants he is trying to sue*. I will therefore grant his IFP motion, but recommend that his complaint be dismissed without prejudice to repleading.

### I.   STEP ONE: *IN FORMA PAUPERIS* STATUS

When a plaintiff files a complaint in federal court, typically he must pay filing and administrative fees totaling $405.[6] District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees."[7]

---

[4] 28 U.S.C. § 1915(a).
[5] 28 U.S.C. § 1915(e)(2)(B).
[6] 28 U.S.C. § 1914. The filing fee is $350 and the administrative fee is $55.
[7] 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson,* 575 U.S. 532, 534 (2015) (plaintiffs who qualify for IFP status "may commence a civil action without prepaying fees or paying certain expenses").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, but he does need to show that "paying such fees would constitute a serious hardship."[8] The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and his dependents with the necessities of life."[9]

In this case, Mr. Carrier has submitted the required affidavit. He states that he has been unemployed since August, 2025.[10] He reports income through Social Security Disability benefits, in the amount of $883 per month, beginning October, 2025.[11] In terms of assets, Mr. Carrier says that he has an interest in a parcel of land in Florida, but that it is held by an "irrevocable land trust" by the name of "Carrier Truck In Trust."[12] A search of publicly available property records reveals that the lot is vacant, and that ownership does in fact reside with the Carrier Truck In Trust.[13] Mr. Carrier reports that he owns free and clear a 2007 Nissan Xterra (valued at $2000) but has only thirty dollars cash on hand and seventy dollars in the bank—and no valuable assets or other income from any source.[14] As for expenses, Mr. Carrier reports that he has $820 per month in fixed expenses.[15] He also reports student loan debt in the amount of $21,000 and "social security

---

[8] *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) ("no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life").
[9] *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).
[10] IFP Mot., Docket No. 2, p. 6. Notably, Mr. Carrier reports that his previous job with a transport company out of Arizona ended in August of 2025 and that he received no income from that job. IFP Mot., Docket No. 2, p. 3.
[11] IFP Mot., Docket No. 2, p. 3.
[12] IFP Mot., Docket No.2, p. 4.
[13] Florida Parcels, https://floridaparcels.com/property/42/33-4N-10-0102-0000-0140 [https://perma.cc/LH3J-VCXX] (last visited November 21, 2025).
[14] IFP Mot., Docket No. 2, p. 4.
[15] IFP Mot., Docket No. 2, p. 5.

overpay" debt in the amount of $6,500, as well as medical debt in the amount of $9,000.[16]  Mr. Carrier's lack of significant liquid assets, and his statement that his monthly expenses nearly exceed his monthly income, satisfactorily establish that paying the $405 filing fee "would constitute a serious hardship"[17] for him.  I will therefore **GRANT** his motion to proceed *in forma pauperis*.[18]

## II.     STEP TWO:  REVIEW OF THE COMPLAINT PURSUANT TO 28 U.S.C. § 1915

IFP status "comes with a consequence."[19]  The same statute that authorizes courts to grant IFP status to qualifying plaintiffs also directs them to review complaints to ensure that those plaintiffs are not abusing that right.  Because IFP plaintiffs lack "an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits," the statute instructs the court to review their complaints and dismiss certain types of abusive or obviously unmeritorious claims.[20]

Specifically, 28 U.S.C. § 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply.  First, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious."[21]  Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted."[22]  Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief."[23]  In this case, there is no basis for concluding that Mr. Carrier's

---

[16]     IFP Mot., Docket No. 2, p. 5.
[17]     *Fiebelkorn*, 77 Fed. Cl. at 62.
[18]     *See also Arpino v. Spera*, No. 3:22-cv-01114 (KAD), 2022 WL 21751856, at *3 (D. Conn. Sept. 22, 2022).
[19]     *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).
[20]     *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).
[21]     28 U.S.C. § 1915(e)(2)(B)(i).
[22]     28 U.S.C. § 1915(e)(2)(B)(ii).
[23]     28 U.S.C. § 1915(e)(2)(B)(iii).

complaint is malicious. On the other hand, the complaint has not put forward any claim of action upon which relief could be granted.

To "state a claim on which relief may be granted," the plaintiff's complaint must include enough factual allegations to add up to a legally meritorious claim, assuming that he could prove them. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims.[24] Conclusory allegations are insufficient.[25] Put differently, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."[28] In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest."[29] Moreover, because *pro se* litigants "'cannot be expected to know all of the legal theories on which they might ultimately recover,' a reviewing court should not consider itself limited by the labels that the plaintiff has chosen to attach to his cause of action."[30] In other words, courts should "not only

---

[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, "you violated my rights" is a conclusory allegation because it states a legal conclusion—rights were violated—without explaining the facts that support that conclusion, or *how* those rights were violated.
[26] *Twombly*, 550 U.S. at 570.
[27] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[28] *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).
[29] *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).
[30] *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022) (quoting *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)).

consider whether [the plaintiff's] specific claims deserve to proceed under Section 1915(e)(2); [they] should also consider whether [the plaintiff's] non-conclusory factual allegations, if proven, would add up to some meritorious claim that he did not think of."[31] At the same time, "[e]ven a *pro se* plaintiff . . . must meet the standard of facial plausibility . . . ."[32]

In this case, Mr. Carrier has expressly attempted to plead a claim under 42 U.S.C. § 1983.[33] To plead a plausible Section 1983 claim, he must allege facts sufficient to show two elements: (1) that he had been deprived of "rights, privileges, or immunities secured by the Constitution and laws," and (2) that the person who deprived him of these "rights, privileges, or immunities" was acting "under color of" state law.[34] In his complaint, Mr. Carrier asserts that he was deprived of his rights under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution; under the Americans With Disabilities Act; "medical confidentiality;" and "pursuit of happiness inherent [in the] Declaration of Independence."[35]

The problem, though, is that Mr. Carrier has alleged no facts that would establish a Section 1983 claim against *the people he named as defendants*. He says that he has been threatened by Stonington Police Sgt. Miller and Lt. Marley, but those two individuals are not defendants.[36] He adds that "Geraldine Peralli Zagora and Michael Zagora's attorney knew, know or saw what

---

[31] *Emiabata*, 2022 WL 40804348, at *5.
[32] *McQuay v. Pelkey*, No. 3:16-cv-436 (MPS), 2017 WL 2174403, at *2 (D. Conn. May 17, 2017); *accord Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility.") (internal citation omitted).
[33] Complaint, Docket No. 1, p. 3.
[34] 42 U.S.C. § 1983.
[35] Complaint, Docket No. 1, p. 3.
[36] Complaint, Docket No. 1, p. 4.

happened" and did nothing, but those people are not defendants either.[37] He alleges that "the Stonington Police department" "acted under color of law to deny [him] assets willed" by his grandfather, but aside from Sgt. Miller and Lt. Marley, he does not identify the Stonington police officers who allegedly did this.[38] Other than including their names in the caption, Mr. Carrier's complaint contains no references to Chief DelGrosso, Judge Leamon, or Marshal Mezick, let alone any plausible factual allegation that they did anything wrong.

I have carefully considered whether Mr. Carrier's sparse complaint allegations might add up to some claim other than a Section 1983 claim, as I am required to do by the rule of *Phillips v. Girdich*.[39] I first considered whether Mr. Carrier intended to bring a *respondeat superior* claim against Chief DelGrosso – that is, a claim that the Chief should be held responsible as an employer for wrongs committed by his employees, Sgt. Miller and Lt. Marley.[40] But it is well established that a police chief cannot be held liable solely because he employed an officer who acted wrongfully. To state a plausible claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[41] As the United States Supreme Court has explained, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[42] Without some allegation that Chief DelGrosso acted wrongfully, a claim that he is liable in *respondeat superior* is not plausible.

---

[37] Complaint, Docket No. 1, p. 4. Mr. Carrier states that his grandfather's name was Michael Zagora, so presumably these individuals are relatives of his.
[38] Complaint, Docket No. 1, p. 4.
[39] *Phillips*, 408 F.3d at 130.
[40] Black's Law Dictionary (8th ed. 2004), at p. 1338.
[41] *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (internal quotation marks omitted).
[42] *Iqbal*, 556 U.S. 677.

I also considered whether Mr. Carrier intended to bring some sort of theft or conversion claim against the defendants, for the loss of the property that he feels he should have received in his grandfather's probate proceeding. Yet even if he intended such a claim, it would merit dismissal for two principal reasons. First, this Court would not have jurisdiction over such a claim. "Federal courts are courts of 'limited jurisdiction,' meaning that they cannot hear just any case,"[43] and absent factors not present here, a claim for theft or conversion of property by a Connecticut citizen against another Connecticut citizen is not a case that this court can hear.[44] Second, Mr. Carrier has pled no facts that, even if he were to prove them, would establish that the defendants stole or converted property that was rightfully his. In summary, even applying the liberal construction due to *pro se* pleadings, Mr. Carrier has not pled a plausible claim.

I will also pause to note that the complaint implicates 28 U.S.C. § 1915's third grounds for dismissal as well. As noted above, a complaint is subject to dismissal not only when it is frivolous or malicious or fails to state a claim, but also when it "seeks monetary relief against a defendant who is immune from such relief."[45] Mr. Carrier seeks "monetary and punitive damages in the amount of $300,000 plus legal expenses" from Chief DelGrosso, Judge Leamon, and Marshal Mezick, but he has sued them all in their official rather than their individual capacities.[46] State and municipal officials are generally immune from money damage claims in their official

---

[43] *Ortiz*, 2023 WL 11842871, at *4 (D. Conn. Mar. 22, 2023) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[44] *See Hamm v. Baio*, No. 3:22-cv-401 (OAW) (TOF), 2023 WL 2867070, at *5 (D. Conn. Jan. 10, 2023) (recommending dismissal of complaint for lack of jurisdiction because the plaintiff's claim was not of the type that a federal court is empowered to hear).

[45] 28 U.S.C. § 1915(e)(2)(B)(iii).

[46] Complaint, Docket No. 1, pp. 2-3.

capacity.[47] This is particularly true of Judge Leamon, who would additionally benefit from the doctrine of judicial immunity even if a plausible claim had been asserted against her.[48]

### III. CONCLUSION

In sum, I recommend that Judge Bolden dismiss Mr. Carrier's complaint. But I recommend that the dismissal be "without prejudice" to repleading. If my recommendation is accepted, this would mean that Mr. Carrier could file an amended complaint attempting to cure the defects discussed in this recommended ruling—in other words, an amended complaint that properly invokes the court's jurisdiction, and that contains enough factual material to permit the reasonable inference that *the defendants he sued* are liable to him for the misconduct that he alleges. There may be no cure for the defects in his complaint, but plaintiffs are usually permitted at least one try.[49]

This is a recommended ruling by a Magistrate Judge.[50] **If Mr. Carrier wishes to object to my recommendation, he must file that objection with the Clerk of the Court by December 16, 2025.[51]** If he fails to file a timely objection, his failure "operates as a waiver of any further

---

[47] *Emiabata*, 2022 WL 4080348, at *7 (holding that the State of Connecticut's sovereign immunity from money damage claims "extends to officers of state agencies when acting in their official capacities"); *Miner v. Sheridan*, No. 3:94-cv-1443 (AHN), 1999 WL 200694, at *10 n.14 (D. Conn. Mar. 29, 1999) ("To the extent the municipal defendants have been sued in their official capacities, they are also entitled to summary judgment because the plaintiffs seek money damages.").

[48] *Hamm*, 2023 WL 2867070, at *5 (observing that, even if the Court had jurisdiction over plaintiff's claim against a judge, "judicial immunity protects [the judge] from a suit such as this one").

[49] *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (observing that *pro se* plaintiffs are often permitted "leave to amend at least once") (internal quotation marks omitted).

[50] Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

[51] *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days).

judicial review[.]"[52]  In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[53]

/s/ Thomas O. Farrish
Hon. Thomas O. Farrish
United States Magistrate Judge

---

[52]   *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).
[53]   *Small,* 892 F.2d at 16; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).